Case No. 24-1039, et al. Michigan Electric Transmission Company, LLC Petitioner v. Federal Energy Regulatory Commission. Mr. Street for the Petitioner, Mr. Kennedy for the Respondent, Ms. Roby for the Intervenors for the Respondent. Good morning, Mr. Street. Good morning, Your Honor. May it please the Court. The Commission unlawfully deprived METC of its exclusive ownership of network upgrades because it interpreted the term system to mean the same thing as facility in the Transmission Owners Agreement, when both plain English and the relevant context would give distinct meaning to those terms. I'll turn first briefly to standing, which we think is straightforward. FERC rejected METC's claim of 100 percent ownership and denied METC's request to delete the intervenors from the Generator Interconnection Agreement. A decision from this Court enforcing the plain language of the TOA would redress that error by giving METC 100 percent ownership. FERC's order had immediate injurious consequences. Rather than being able to enter into a contract with just MISO and Eagle Creek, the generator, knowing that it would have 100 percent ownership of the network upgrades, METC instead was required to negotiate and ultimately enter into a contract with MPPA and Wolverine, parties that it did not wish to contract with and which it believes do not have any rights. Is the kind of formal label for what you did was a protest, am I right? Yes. So when you file a protest, do you get to ask for sort of the equivalent of declaratory relief? Is that normal? Yes. Yes. The parties propose what they think the GIA should look like. MISO, as the RTO, accepts one proposal and puts that forward to FERC. Because my client METC objected, it was an unexecuted Generator Interconnection Agreement. It goes then before FERC, METC files its protest saying, here's what we think the ownership allocation should be with respect to these network upgrades. I think FERC would have had the authority to say, we agree, and this proposal by Michigan Electric is the proposal we order everyone to do. Yes. Yes. Because the Transmission Owners Agreement provides scenarios with respect to who owns these network upgrades. So it was up to the commission to properly interpret that plain language and declare the proper ownership of those network upgrades. And we would, of course, had 100 percent under our plain reading of the TOA. This doesn't bear on standing, but it's relevant, I think, to where we are, which is to say now there's another unexecuted agreement, correct? I mean, it has not resolved. It's been accepted for filing, but it has not resolved the question of ownership. Yes, Your Honor. Does the commission have the authority to determine ownership under those circumstances where you've already been remanded and negotiated and still can't reach an agreement? Or is it possible there just never be an agreement and the facilities won't be built? Because the new GIA has been executed and accepted by FERC for filing, even though nobody knows who owns what, the facilities are being designed and built by METC. But the question remains as to who owns those facilities. So there is no guidance to the parties from the commission with respect to how to negotiate this or who owns what, and there's no suggestion that the commission is going to pull a rabbit out of a hat and find some provision that resolves this dispute. So we are sort of in limbo, and that goes to part of our standing, that we're having to go forward and design and build these upgrades, not knowing whether we even own 100 percent or 33 percent or zero percent. Was there a requirement that you go forward with construction? No, the generator wanted to get this power onto the grid, and so we were forced with the idea of either just not executing an agreement at all and just letting things sit, which is an injury in itself because we can't begin collecting a return, or going ahead and executing with the ownership blanks left open for resolution by this court. If there are no further questions on standing. If the court were to hold this is not right, when do you assume FERC would respond to resolve the question? As I mentioned to Judge Ginsburg, I don't think FERC is ever going to be able to resolve this question. They sent it back to the parties to be negotiated. So I guess at some point the parties would just put their heads together and come up with something and propose that to FERC. Our point regarding ripeness is that there's already an injury now because we've had to negotiate, spend dollars and cents and time negotiating. We've had to effectively enter into this contract or just sit there and delay, and those are currently dollars and cents injuries of the type this court recognized as sufficient in the Rio Grande and Great Lakes cases. There's also the planning and the financial uncertainty that comes from not knowing what upgrades we own. But I'll stop there on standing unless there are further questions. Turning to the merits of the Transmission Owners Agreement, Section 6, Romanette 1, gives METC 100% ownership because the network upgrades here connect to a, quote, single owner's system. METC owns the system to which Eagle Creek will interconnect, while the interveners own a facility on that system. This is made clear in the order below. In paragraph 2 of the order below, FERC says, and I quote, the Styx Murphy line is jointly owned by METC, MPPA and Wolverine and is located on METC's transmission system in Michigan. At paragraph 7 of the same order, the commission says, quote, to METC's transmission system. That should have been all the commission needed to do to resolve this case. It's even more striking if you look back to previous FERC orders involving these very same assets, the Michigan Public Power Agency order and the MISO order, which we discuss at length on pages 24 through 26 of our opening brief. The MPPA order, FERC said that MPPA and Wolverine have, quote, joint ownership interests in transmission facilities that are part of the METC transmission system. MISO order referred to Wolverine's MPPA and METC's joint ownership of certain transmission facilities on the METC system. So FERC knew that these were distinct terms that had a meaning. And those orders reflect that the meaning of the term system is the legacy collection of interconnected transmission assets that METC inherited from the integrated monopoly, while the term facility means one component of that system, such as a transmission line or a substation. To which FERC, as I understand it, says basically, look, we use those terms inconsistently in other sources, to which you don't point, of course, and it really is not that clean cut. If it were that clean cut, there'd be certain anomalies. Let me take you to the one of most concern. It's at 43 in their brief. What if the interconnection takes place between facilities owned by A and B, but those facilities are within the footprint of C's system? Section 6-1 and 6-2 would be in direct conflict. What do you say? Well, I think it's important to note that FERC does not make any textual arguments in support of its position. It does take pot shots at our position. It's not on 6-1, but it's saying, look, if you're right about 6-1, then 6-2 is deprived of all meaning. And all upgrades anywhere connected to the system would be owned by Medica. So let me respond directly to that. First of all, I want to point out that that is a hypothetical conflict that FERC does not identify has ever arisen in a case. And there's a good reason for that. If there were this potential conflict were to ever arise between Romanet 1 and Romanet 2, either the commission or the court would construe those together to give both of them effect. And I think what the commission could do is to say if the facility, if the new transmission connects between two facilities within the same system, then Romanet 2 is the more specific provision and that would control. But I think there's also this is also very important that there's a reason that this is likely never going to arise. And METC actually explained this quite helpfully before the commission at JA 189-90. And there METC explained that FERC applies Romanet 2 when there is a long range transmission facility that is connecting two different systems together. It's typically two different systems that are far apart. For example, a long range transmission line between Iowa and Wisconsin. That's what Romanet 2 applies to. It doesn't apply to generator interconnection. It applies to these long range. So under those. Is there anything in the terms of two to limit it that way? No, I don't think it's in the terms of two other than it does say it connects between two facilities, which suggests that this is not an example where it's two systems. Well, it's two facilities on two systems. And that's just practically when that has applied. Because if it is not a generator interconnecting to a system, which is Romanet 1. I think the transcript will show that you just said we could think of this as connecting two facilities on two different systems or connecting two different systems. In other words, you're using the terms interchangeably. I'm not using terms interchangeably, Your Honor. I am saying that the times in which FERC has, as a practical matter, applied Romanet 2, is when there is a long range transmission facility that happens to connect facilities on two different systems. And therefore, as a practical matter, the conflict is not going to arise. That's just the nature of what two is getting at is long range transmission facility. Is that point in your brief, that precise point? I don't think that that precise point is in our brief. I don't think it is. But we did point out that this is a hypothetical conflict that has never arisen and that the court or the commission could reconcile the two conflicts. Let me ask. I think the way the brief puts it is basically if that were to arise, they'll figure it out. And I think that when we went back and looked at what we had said below, we explained very helpfully to FERC why this had never arisen. And FERC didn't contest that interpretation. Where is that? It's at 189 to 190. You said that earlier. Yes. And I don't have the direct site, but the commission recognized that argument in its order as well. At one point in the brief, the commission says. The ownership determinative distinction in section six is the number of miscontinent owners at the points of interconnection, not whether the point of interconnection is viewed as a system or facility. Moreover, as the Stixmurphy agreements themselves establish, the Stixmurphy line is a collection of components that work together as a system to transmit electricity. Why is that wrong? Well, first of all, your honor, that is a post hoc rationalization. The commission never. I mean, all of much of what we're getting from both sides is winging it because the language isn't clear anywhere. And you're both doing your best to try and give it some sense. And I'm respectful of both sides. So, I don't know about post hoc rationalization. You just came up with something that wasn't in your brief either. And we listen. So, if you just answer, of course, I'm not the agency, but beyond that, the. Yeah, so, I mean, the commission could have written or the tariff on the transmission owners could have written the tariff that way to focus on points of interconnection. But it doesn't instead. It uses the distinct terms, systems and facilities. And I think we can see the absurdity and what the commission is saying when we compare their initial order versus their rehearing order. Recall that in their initial order, they're addressing the interveners argument that that six Roman at two applies. And there they say sticks. Murphy is, quote, a single facility at paragraph eighty eight of the rehearing order of their initial order in the rehearing order. They turn around and they say, no, sticks. Murphy is actually a system. So, there's no single system owner because everybody owns part of that system. So, those two things cannot be held together. And I think in one's mind at the same time, the last one counts. Well, it's certainly seriously. I mean, it may be both of you are kind of winging it along the way. The language is hardly clear in the contracts and anything else we're being directed to. Well, and system facility, quite frankly, those two terms are not clear cut in the materials we're looking at. Well, I would respectfully disagree without belaboring the point, which is that in this very order and in the previous orders that I quoted to the court, the court says the sticks. Murphy line is a facility that exists on Mets transmission system. So, the system is this legacy set of interconnected transmission assets. A facility is something like a line or a substation. The commission knows that it uses those terms that way all the time. It doesn't use the terms interchangeably. That's an argument they came up with on the re-hearing order to, for whatever reason. Where have they ever said that definitively? I think that they said that when they used the language that I quoted. That's all you have, just this case? I mean, you're saying it like everyone in the world understands this. And so, in preparing, I was looking for an expression of that world known understanding. I don't see it anywhere.  So, system is not a defined term in the TOA. To that extent, you're precisely correct. So, I think that it's appropriate to look at the way FERC uses that term, which, again, is to refer to this geographic system. Whereas a facility, just in plain English, a facility versus a system, a facility is going to be something that makes up the system. So, I think you're right. There's no definition that we can point to. We can point to the way the commission used the term in regard to these very assets. And we can point to plain English. We can also point to the fact that under the commission's interpretation, there is a gap in coverage of the Transmission Owners Agreement. It gives no guidance to these parties as to who owns the network upgrades in this scenario. I think that's a strong strike against FERC's reading. If you said a minute ago that a facility is a line, and I think your understanding of system is that a system is a bunch of connected lines, why should we just view that as one long line? Well, because it is more than lines. It's lines. It's substations. It's all of the other assets that are. And a single facility, as you understand it, include, like, line, substation, line? I don't think that would be one facility. That would be a system. Well, it would not be a system. It would be – it could potentially be multiple facilities. A system is the system as a whole, which is a geographically coterminous legacy set of wires that really got inherited from the monopoly. That's the way the commission uses it when it says the METC system. Let me just zoom out for a second. The sticks line, you say that's a facility, not a system. Yes. And I get that it's shorter than the rest of the system. But is there a substation in the middle of the Sticks-Murphy line? Yes. So why is that not a system with three facilities? Let's say there's only one substation. Line, substation, line. Why is the Sticks-Murphy line not a system with three facilities? Well, okay, so you can have a system and you can have a multiple number of facilities that still are not a system. The system is the overall collection, just as in our – That just sounds like you're – I think I'm pretty sympathetic to your argument, so I'm just trying to figure out – Well, let me – – and test it a little bit. And sometimes it sounds like you're saying, like, a facility – a system is just, like, bigger than a facility. Sometimes it sounds like you're saying a facility is a small system and a system is a big system. I know that's not what you're saying, but I wanted to see why that's not what you're saying. Sure. No, a system is the total collection of transmission assets that the legacy transmission provider operates. So we own – we wholly own 98 to 99 percent of all the assets that are transmission assets in Lower Michigan. That's our system. That's the way the commission uses the term system. A facility is any smaller component of that. I mean, it could be one facility. It could be multiple facilities. But I think the direct answer to your question, FERC gives you, right, in its order, order at paragraph 88. It says the Sticks-Murphy line is a, quote, single facility. So it has told us – I mean, but Judge Ginsburg says, you know, sometimes they call it a system, sometimes they call it a facility. Right. You don't want to do, like, you know, a cocktail party and just pick out your friends. Well, I think that that – the fact that they're calling it a facility at one place and then saying, oh, well, it could be a system over, you know, on rehearing shows the irrationality of its order. Is that the only time that they make the switch? Because that would – the timing there would seem artificial. I mean, that would support your argument. That's the – I mean, let's put it this way. The other side has not identified any other time when a facility has been called a system. Okay. The only thing they do is use defined terms like transmission system. And those use transmission system to mean the collective of all of the facilities. And they try to say, well, that means system equals facilities. Well, no, system equals the collection of facilities. Now, I think, as Judge Edwards referenced, there is this point of interconnection theory. As I've argued, I think that that is a pure policy argument. It's not a textual argument. And maybe it would make sense to have written the TOA that way, but it's simply not written that way. Whereas Metsy's interpretation gives each term its natural meaning, and it makes sense as a practical matter. I think that's important because Firk's argument sounds in policy. Ours actually makes more sense as a policy matter. If you look at Romanet's – if you look at Section 6, Romanet 1. You're a bit over your time, Mr. Street. I know we've asked you a lot of questions, and I'm partly responsible for that. But if you can wrap up in a minute or so. Certainly. Thank you, Your Honor. This will be the last point, which is that our argument makes sense as a policy matter. If you look at Section 6, Romanet 1, you see that ownership of the network upgrades goes along with, quote, the responsibility to construct those network upgrades. It makes sense to keep the ownership and the responsibility to construct with the legacy system owner. Because the legacy system owner is the one with the expertise and experience in building transmission infrastructure. And here, that's Metsy. Under the commission's argument, you could have one-off facility owners, like the interveners, with ownership of network upgrades, even though Wolverine is a generation company. It doesn't have the expertise or the experience to construct those facilities, or as one goes on to say, maintain such facilities. Who maintains and operates the Stigmorphy line? Is it just you, only you? Yes. So I think that. And on your metaphor about the skeleton and the bones. So, you know, bones are connected by things that are not bones, I think. It's been a while since I did high school anatomy or something. But as I understand it, facilities are connected to each other by other facilities. Right? Sure. I think the analogy breaks down a little bit there. I'm not sure that I follow, but I think I would say that even if there are facilities connected to other facilities by facilities, that doesn't make that small group a system in the sense that the commission uses the term system. I'm still a little confused about why. Sometimes it sounds like you're saying system is big, facility is small. If that's it, that doesn't seem like a very good line to draw between the two. Because, I mean, how do we know that the Stigmorphy line isn't big enough to be a system? Besides what the commission said, that it's a single facility. I think that's a strong point. So I would put it this way, Your Honor. It's not that a system is big and facilities are small. It's that a system is the overall collective. And you have individual facilities that are part of that system. And you have more than one facilities that are also a subcomponent of that system, whether it's the Stigmorphy line or whatever the Stigmorphy line connects to. Is the Stigmorphy line multiple facilities? No, I think we would agree with the commission that it's a single facility. But it does have lines connected by generator stations, right? It has lines that are connected to substations, yes. And each substation is a facility? I mean, I don't have any quarrel with the commission saying the line is a facility. That's the way both the Stigmorphy line is a single facility. That's what we've always argued. I think that makes sense. But even if you view it as two facilities, that doesn't make it a system. Counselor, you referred us to 189 to 190 in the joint appendix. I thought it was for the proposition that the commission uses 6-2 when it's faced with your Iowa to Wisconsin example. But a quick read here suggests to me this is not an empirical observation at 189 to 190 at all. It's your interpretive point. I think that it is our view of what the commission, when the commission has used section 6-2 to assign ownership, because in those instances of the long-range transmission connecting Iowa and Wisconsin, for example, the commission gave equal ownership of that transmission line to the Iowa system and to the Wisconsin system. And, again, the commission didn't push back on that and say, no, that's an incorrect interpretation. In fact, remember, it rejected the intervener's reading of 6-2. So I guess I would wrap up just by saying whatever the hypothetical issues that could arise with our interpretation, they pale in comparison to FERC's, which is conflating the key terms to mean the same thing and is leaving gaps in coverage that leave the parties to negotiate without any guidance. Thank you. Good morning. Thank you. Good morning, Your Honors. Robert Kennedy on behalf of the commission. The commission appropriately found in this case that section 6 of the transmission owner's agreement doesn't have ownership of network upgrades turn on whether the point of interconnection is better characterized as a facility or a system. That conclusion is consistent with the structure of section 6, which uses the terms interchangeably, as we discussed before, consistent with other portions of the tariff and the transmission owner's agreement, which equate facility to system. And it avoids some of the interpretive problems that are associated with Michigan Electric's interpretation. With respect to the structure of section 6, I think you see the interchangeability of the terms most clearly in 6-2 and 6-3. They both describe precisely the same situation, a new piece of infrastructure being put onto the grid between two existing pieces of the grid. In 6-2, it's described as being placed between two facilities. In 6-3, it's described as being connected to systems. And I think that shows the key variable in section 6 isn't whether the point of interconnection can be dubbed a facility or a system, but the key variable is where is the interconnection taking place? It uses the words connected. And who are the owners, the number and their identity? The terms facility and system are just simply used interchangeably, and that's consistent with the various definitional terms that the commission went through in its analysis to determine there wasn't some ownership determinative distinction between facility and system. You see in paragraph 86 of the initial order and footnote 89 of the rehearing order, the commission cites the tariffs generator interconnection procedures definition of transmission owners. And in there, it describes facilities as a portion of the transmission system. The definition of transmission system in those generator interconnection procedures describes the system as simply the facilities owned by the transmission owner. And these are the pro forma terms. The parties incorporated the same terms into their proposed interconnection agreement. The commission also looked at the definition of system in the transmission owners agreement, and all that says is that the facilities comprise the system. So nowhere in the way the parties used those terms is there a stark distinction between a facility and a system such that section 6 should be read to have ownership turn on that. Do you agree that Michigan Electric maintains and operates the Sticks Murphy line? That is my understanding. I believe the interveners pay some of the operational costs, but I believe there's an agreement that they'll be operational. And that was the same agreement that they proposed with respect to the upgrades. Do you know of any other facility? There may be many. I don't know. But do you know of any other facility that is maintained and operated by someone other than the system owner? Well, I mean, your question gets into what is a system. I will say in footnote 1 of the intervener's brief, they cite to MISO's website where MISO lists all the facilities that have been transferred to their operational control. And you can go through it, you know, owner by owner and see. In a number of those cases, there are jointly owned facilities, and particularly among these three parties that are apart from the Sticks Murphy line, there are a number of jointly owned facilities. I don't know, frankly, what the agreement is among all those parties as to who will operate. But it's not an uncommon situation that there is jointly owned facilities. Someone could say, I don't operate this. I don't care whether for the purpose of this question, let's not distinguish between a facility and a system. I don't operate this thing, but it is mine. I'm sorry. I don't operate this system, but it's my system. Well, yeah, I don't think that's an unreasonable interpretation. Has it ever been said? I don't operate the system. But, well, I mean, that's the position here of the parties. Yeah, I don't know whether it's come up in that way, but it's certainly not unreasonable. I mean, you think, you know. When things are unprecedented, it's a red flag. I'm not saying it means you lose. If this is the first case when anyone has ever said, I don't operate this system, but it is my system. Well, I think this is the first case that I had, at least as far as I've been able to see, where there's been a dispute under interpreting Section 6-1 here. But, again, I think, to your point, Your Honor, it's important to look at Section 6 doesn't just say system. It says single owner system. So, I mean, we're almost at opening day. George Steinbrenner was the owner, was a owner of the Yankees. They were minority partners, but he certainly operated the team. That didn't make him the single owner. And so I think that's one of the, you know, you saw it in the discussion today. One of the fundamental problems with Michigan Electric's position is what is a system? They say a single line, even though it transmits energy over the Sticks-Murphy line, 45 miles. That's not a system. All these definitions that the parties use just say it's the facilities turned over to MISO. So, again, you go to the MISO website, and you see Wolverine and Michigan Public Power have turned over a number of facilities to MISO, including the Sticks-Murphy line. Is it on their system? Is it on their system? There's no language in the operative agreements here that would help with that determination. They sort of import some connectivity requirement almost. But if you look at, again, you go to that website, the parties have jointly claimed ownership interest in three lines stemming from the Murphy substation. As you know, there's three or four times at least where FERC said it's Michigan Electric's system. Why did you say it's their system if it's not their system? Well, I think the reason, again, the commission, until rehearing, this crystal clear provision that supposedly governs this wasn't raised to the commission on rehearing. So it was not asked to kind of take a hard look at Section 6.1 and see if the parties made a distinction between system and facility. I mean, we don't dispute that in the normal course there could be some distinction between a system and a facility. But the question before the commission was, did the parties intend in Section 6 for ownership to turn on some undefined distinction between the two? And we think the commission reasonably found that they didn't. And the other interpretive problem that you noted, Judge Ginsburg, is what happens if, again, there's multiple jointly owned facilities within presumably among these parties. So what happens if there's a network upgrade between two jointly owned facilities under Section 6.2? The answer would be they split it. But taking their position that everything within our legacy facility is ours, they would get ownership under 6.1. And there's a conflict there. If you just look at where is it connecting? They also at that point, defending that point, faulted the commission with the point that there is no evidence on the record that there are any other facilities part of the METC system that are not wholly owned by METC. I believe their point was that there is not any facility on their system that they don't at least have some ownership interest in. There are a number, as I understand it, of jointly owned facilities. There's no ‑‑ I think their statement was that there's no facility that they don't have any ownership in that falls within whatever they ‑‑ however they define it. And to be fair, that was the circumstance the commission used in talking about the conflict that emerged. But it will equally emerge with a connection between jointly owned facilities. And I ‑‑ Whose responsibility is it to resolve this? I'm sorry? Whose responsibility is it to resolve this? Well, ultimately, I mean, this kind of gets into why we raised the standing argument here. You know, the commission didn't make an ownership determination, didn't preclude single ownership, didn't require joint ownership. If you look at section 16 of the intervener's brief, they suggest that there could be additional provisions that bear on the ownership question here. But it did ‑‑ I mean, the commission freely acknowledged that it did ‑‑ this case did reveal a gap in the tariff. And, you know, petitioners see that as a strike against the commission's interpretation. I would just point you to, you know, section 6 here. On the top right, it has the revision numbers. And when this case started, we're up to revision 36. These are complex systems with complex questions. So it's not uncommon that, you know, factual disputes show a gap in the tariff, I think. Whose responsibility is it to do that? So I ‑‑ if there is no ‑‑ if there is no other provision that bears on it, I guess the parties would have to come to an agreement of shared ownership, propose that to the commission, if the commission ‑‑ Suppose they don't. Whose responsibility is it? Well, then it could be up to Midcontinent to say there is a gap on our tariff here. That's how we're going to revise it. And we're going to ‑‑  Well, it would have to be proposed to the commission, and the commission would have to approve it as being just and reasonable. So it's the commission's responsibility to decide. Ultimately, yes. Yes. In response to, you know, in reaction to what either these parties or MISO puts in front of the commission. You're saying MISO could revise and submit for approval a change in the transmission TOA? It could say, yes, commission, you identified this gap. Here's how we're going to fill it. Of course, that raises the question, okay, well, does that apply to ‑‑ how does that apply to this situation in terms of retroactivity? So I'm not saying that's a clear ‑‑ I'm not saying that answer won't ‑‑ that result won't resolve all disputes. It's a new submission that's now before the commission. Was that submitted by MISO or by the other parties? I believe MISO submits it on behalf of the other parties. And my understanding, it's ‑‑ they described it as a placeholder agreement. And they can describe it better than I. But as I understood it, they're saying, you know, we entered into this agreement so the connection can go forward. We'll resolve ownership issues after this case is resolved. So they want to get something on record so it can go ahead but left open the question of ownership. That they will resolve it after this case is determined? Well, they're ‑‑ yes. They've already filed the document. Right, but it doesn't ‑‑ it doesn't lay out how the ownership of the network upgrades. I understand that. I thought they were leaving it to the commission to do that. Well, they ‑‑ as I understood, they're saying we're not going to ‑‑ we're going to leave this open until the court rules on this appeal. And then, you know, then we'll take it under consideration and figure out a path forward. I'm not sure whether you're answering it clearly or you're trying to avoid it. No, no, no. Either it ends with the commission and they have to decide this question or not. Ultimately, the commission will have to approve the generator interconnection agreement. If they come back and say we can't ‑‑ we can't reach a resolution, we think ‑‑ we still think we own all of it, who's going to resolve that? Then I think that might be a question for the commission to, you know, take evidence and resolve it itself. And that's only might be in your mind. You think, but you're not sure. Well, yeah, if this is a gap, then the commission would have to ‑‑ if the parties are unable to come to a resolution, yes, then the commission would have to resolve that question somehow. Okay. Let me see if there are any other questions.  Thank you, Your Honors. May it please the Court, Deborah Roby on behalf of Intervenors, Michigan Public Power, and Wolverine. And I'd like to start with Judge Edwards' question first. The commission will decide this. The commission will decide this because what was put before them was a very specific provision, Section 6.1, and started with Section 6.2. Are we dealing with facilities between two owners? And the commission said we can't find that. That's not here. We don't have that situation. Are we dealing with ‑‑ it was only then, by the way, that Michigan Electric comes in and says, let's talk about Section 6.1. Because at the outset of the proceeding before FERC, they were the ones who said Appendix B, Section 6, doesn't apply at all. After the commission said Section 6.2 doesn't apply, they come in on rehearing and say, ah, let's look at Section 6.1. So they're being critical of FERC for switching between facilities, which is what 6.2 addresses, and system, which is what 6.1 addresses, is a result of the switch in position of Michigan Electric here. So what the commission has before it right now is a newly executed GIA, Generator Interconnection Agreement. All three of the transmission owners have signed that agreement, by the way. And there is a placeholder in that agreement that says the three transmission owners will have to discuss among themselves how we're going to resolve the question of ownership. And if we can't come to an agreement, which is why we're here premature, by the way, if we can't come to an agreement, it doesn't mean that we have no way to address it. It doesn't ‑‑ Michigan Electric doesn't like what the commission's decision was on 6.1, but it's not here because of that decision. It cannot deny it is one of three owners. It is a joint owner along with Wolverine and Michigan Public Power. This is by agreement. We are strange bedfellows, but here we are. The three of us are going to have to work this out. And if we can't rely on 6.1, we have the MISO tariff, attachment FF of the MISO tariff, which is not before the court today because it was not before the commission before it. We have other provisions in the tariff that we can look to to help us resolve this. And if we can't resolve it on our own, then we'll have to put forth our best arguments to the commission yet again on how to address this. But this can be addressed and will be addressed before we are here prematurely. The next thing I'd like to address, if I could, is Section 6.1 and the distinction between facilities and system. And the significance of the point of interconnection. Even Metsi agrees. You don't get to a system without going through a facility. The point of interconnection here is to the Stixmurphy line. A point of interconnection is not an abstract concept. A system is not an abstract concept. You only get to the system by going through the facilities. So the facility I'd issue here is a Stixmurphy line that has three owners. And under the MISO tariff, the owners agreed that when network upgrades are ordered by MISO, under the MISO rules, it is the owners that have the right to own those upgrades. That's how we get to ownership among the three of us. Judge Walker, you asked about can a single facility be a system. The Commission has answered this question as well. Footnote 90 of the Order on Rehearing recognizes that there are transmission owners who have a single facility, and that single facility can be a system and is a system. So the Commission's use of facility versus system depends on the circumstances presented before it. And Section 6 uses the terms system and facility in a lowercase term so that it can address the different circumstances that exist throughout the very vast region that is the Mid-Continent region. What is the difference between a system and a facility? It depends on the circumstances. Well, let me talk to the – let's use footnote 90 where there is a single owner that has a single facility that is in the MISO region that is also a system. And let's apply that in the context of Section 6.1. If that line were part of the METC system, as METC says, but METC doesn't have – METC is not the owner of that line, then under METC's interpretation of 6.1, it would be METC that gets the right to own the upgrades to that line because it's part of its system. That's an absurd result. And it's no less absurd when you apply it to the facility that is the Stixmurphy line where it has 1 percent ownership versus 99 percent. And that's not just a hypothetical. That's a – there's a real – That's a real world. There could be an interconnection to that line to the owner that is listed in footnote 90. Yes. But what is the example of it? I'm not sure I'm understanding the question exactly, although – You could say it's the Lansing-Ann Arbor line. That's the example of it. It's referenced in footnote 90, and I forget the name of the – They do name it. They name the company, yes, that owns that. It's their line, and it's a single owner's line, in which case if there's an upgrade to that, you're in Section 6.1 territory. So is it a facility or is it a system? And the commission correctly looked to the governing documents, the transmission owner's agreement. They looked to the MISO tariff, including the generator interconnection procedures, to help inform what does system mean in this case. They correctly and reasonably determined we can't apply Section 6.1 here because we don't have a system that has a single owner. And, again, Metsy agrees, and Metsy says a system is made up of facilities. So whether you look at the Stixmurphy agreement or the Stixmurphy line as a facility or a system, as a facility distinct from a system, as Metsy claims, or whether you look at the Stixmurphy line as a system, as the commission reasonably concludes, the fact is you have a system made up of facilities, and 6.1 cannot apply. Michigan Electric has, whether you want to call facilities or systems, that cover like two-thirds of Michigan, the Lower Peninsula, I think. Is that correct? Yeah, I'd like to touch on that. Michigan Electric is the majority owner. Reference to the Michigan Electric system is often a term as an ease of reference. If you want to think of it in terms of law firms, you have six partners that you're going to refer to, maybe the first or two. But it's an informality, and there's no legal significance given to that. And other times, if the legal significance attached to it is, that means it's the facilities owned by Michigan Electric. So when somebody's using the Metsy system, they're using the facilities that Metsy owns. Does anybody else operate any of the facilities on what I'm going to call the system covering two-thirds of the Lower Peninsula? Yes, Wolverine is a transmission owner, and it operates its system. It has ownership in facilities that, along with Metsy, that Metsy operates, and that operation is by contract. But that makes it no less of a system that belongs to Wolverine, which means we're not in a single owner's system. And the way Michigan Electric is thinking of it, that Wolverine system would have to be part of the Michigan Electric system. That's part of what Michigan Electric is calling its own system? Well, I don't want to answer for that. I don't think so. It does sound like there's a Wolverine system, and there's a Michigan Electric. A system can refer to and does refer to the facilities that you own. That somebody else may operate it doesn't mean that it's not a system that's yours. And also to your question. You're saying some people operate things on Michigan Electric's system, that some people other than Michigan Electric operate facilities on Michigan Electric's system? Michigan Electric operates facilities in the Lower Michigan Territory. There are other owners and systems in the Lower Michigan area. They're not part of Michigan Electric's system? Well, they are not part of the facilities that Michigan Electric operates and that Michigan Electric calls its system. And I guess my point is, it is not a system that has a single owner because there are other owners of the facilities that make up the system. The fact that they operate it doesn't make it theirs any more than if somebody else were operating it. That operation is by agreement. And, yes, there are other areas in MISO that have that same arrangement. We have other clients that have the same arrangements. Thank you very much. Thank you. Maybe three minutes for rebuttal. Thank you, Your Honor. A few points in direct response there. First of all, I think it's important to note that the commission didn't just say METC had a system in an offhand way in its previous orders and in this order. It said that METC owned the system and MPPA and Wolverine owned a facility on that system. So they used them distinctly. Now, we've got talk about a Wolverine system. That would have been cited all over their brief if there was any reference in a previous commission order to a Wolverine system. There's a Wolverine facility that is on the METC system. I think your questions about operation go right to the point. We had the Steinbrenner hypothetical. The problem here is that we have plain text of Section 6 Roman at 1, which says that the ownership of the network upgrades goes along with the responsibility to construct and maintain those upgrades. METC is the one that actually is going to maintain and construct these upgrades, as we've already heard. And otherwise, we have generators that don't even know how to build transmission, much less operate transmission, that are owning network upgrades. So I think that goes strongly to the plain text. We've heard the argument about that it would be absurd if there was a facility in which we own 0 percent, but it was within our system. There is no evidence of that, and I can tell you that is not the case. There is no point on METC's system where we don't own at least some of a facility. In fact, we wholly own 98 to 99 percent. But that's not in the record. Well, that's not in the record either way, because the commission just used a hypothetical, and it didn't say, and here's the point on the system. And, of course, FERC hasn't pushed back on that. I think it effectively conceded that in its argument this morning. I think what we heard from Judge Edwards' questioning of the commission is that the gap that is created by the commission's interpretation is a huge practical problem. It throws the parties back into totally undirected negotiations with no idea who's going to resolve it. The commission suggests that this should be done through a revision to the tariffs. Well, A, that presumes this is not unambiguous in our favor already, but I think that that cuts against them. That means if FERC does not like the way the plain language is being applied or MISO doesn't like the way the plain language is being applied, then they go and revise it to put in the points of interconnection theory. You don't jam up the transmission owner, METC, here that has relied on the plain text of that agreement as part of the transmission owner's agreement. And, finally, I would just point out, I think at the absolute best, FERC can get to ambiguity under a very lenient reading of Chevron step one. And if you think that that is where we are, then the court does have to address whether Chevron-like deference continues to apply to interpretations of contracts and tariffs after Loeb or Bright. We don't think it should hold that. But if you go with our interpretation that the plain language is unambiguous in giving METC 100% of these network upgrades, then the court does not need to reach that question. Did you say something a minute or two ago that's responsive to the footnote 90 argument that Ms. Roby mentioned? I have to say I'm completely perplexed by that argument. I looked at footnote 90 in both the order and the rehearing. It does not discuss any point on the METC system or on any system where the system owner does not own some part of the facility. Thank you.
judges: Walker; Edwards; Ginsburg